1  Nicomedes Sy Herrera (SBN 275332)
   *nherrera@herrerakennedy.com*
2  Laura E. Seidl (SBN 269891)
   *lseidl@herrerakennedy.com*
3  Bret D. Hembd (SBN 272826)
   *bhembd@herrerakennedy.com*
4  **HERRERA KENNEDY LLP**
   3500 W. Olive Ave., Suite 300
5  Burbank, CA 91505
   Tel: (213) 394-3100
6
   David B. Harrison, Esq. (*pro hac vice to be filed*)
7  *dharrison@shnlegal.com*
   Alexandria D. Martinez, Esq. (*pro hac vice to be filed*)
8  *amartinez@shnlegal.com*
   **SPIRO HARRISON & NELSON**
9  363 Bloomfield Ave., Suite 2C
   Montclair, NJ 07042
10 (973) 744-2100

11 *Attorneys for Plaintiff-Relator*

12

13              **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15 UNITED STATES OF AMERICA,          **Civil Action No. 2:24-cv-10648-PA**
   *ex rel*. SOMADEV PASALA,          **(RAOx)**
16
                                       **Hon. Percy Anderson**
17              Plaintiff-Relator,
                                       **FIRST    AMENDED    COMPLAINT**
18       vs.                           **FOR    VIOLATION    OF    THE**
19                                     **FEDERAL FALSE CLAIMS ACT, 31**
   FULGENT THERAPEUTICS LLC, and       **U.S.C. §§ 3729-3733**
20 FULGENT GENETICS, INC.,
                                       **FILED UNDER SEAL**
21                                     **PURSUANT TO**
                Defendants.            **31 U.S.C. § 3730(b)(2)**
22

23

24                                     **JURY TRIAL DEMANDED**

25                                     DO NOT ENTER ON PACER
                                       DO NOT PLACE IN PRESS BOX
26

27

28

FILED
CLERK, U.S. DISTRICT COURT
1/16/25
CENTRAL DISTRICT OF CALIFORNIA
BY:    MRV    DEPUTY

Nicomedes Sy Herrera (SBN 275332)
*nherrera@herrerakennedy.com*
Laura E. Seidl (SBN 269891)
*lseidl@herrerakennedy.com*
Bret D. Hembd (SBN 272826)
*bhembd@herrerakennedy.com*
**HERRERA KENNEDY LLP**
3500 W. Olive Ave., Suite 300
Burbank, CA 91505
Tel: (213) 394-3100

David B. Harrison, Esq. (*pro hac vice to be filed*)
*dharrison@shnlegal.com*
Alexandria D. Martinez, Esq. (*pro hac vice to be filed*)
*amartinez@shnlegal.com*
**SPIRO HARRISON & NELSON**
363 Bloomfield Ave,, Suite 2C
Montclair, NJ 07042
(973) 744-2100

*Attorneys for Plaintiff-Relator*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *ex rel*. [UNDER SEAL], <br><br> Plaintiff, <br> v. <br><br> [UNDER SEAL], <br><br> Defendants. | **Civil Action No. 2:24-cv-10648-PA (RAOx)** <br><br> **Hon. Percy Anderson** <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3733** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** <br><br> DO NOT ENTER ON PACER <br> DO NOT PLACE IN PRESS BOX |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Somadev Pasala ("Relator") files this qui tam action against Defendants Fulgent Therapeutics LLC and Fulgent Genetics, Inc. ("Fulgent Genetics") (collectively, "Fulgent" or "Defendants"), and alleges as follows:

## **INTRODUCTION**

1.    This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' submission of false claims to the Government for reimbursement of COVID-19 testing services in violation of the False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "FCA").

2.    From at least May 2020 through March 2022 (the "Relevant Time Period"), Fulgent, a clinical laboratory that provides testing of samples collected from patients, systematically defrauded the patient enrollment system for the federal program that reimbursed health care providers furnishing COVID-19 testing to uninsured persons (the "Uninsured Program") by fabricating patient names and billing the Government for tests it did not provide.

3.    During the COVID-19 crisis, the Federal Government funded the Uninsured Program to support COVID-19 testing of uninsured individuals by eligible healthcare providers across the United States.

4.    While the tens of billions of dollars in funding were undoubtedly necessary to ensure uniform and continuous testing of a large segment of the U.S. population (approximately 25.6 million people), it also became a target for opportunistic providers to implement creative schemes to generate huge amounts of ill-gotten wealth.

5.    One such opportunistic provider was Fulgent. For close to two years, Fulgent submitted false and fraudulent claims to the Uninsured Program with

FIRST AMENDED COMPLAINT (UNDER SEAL)

1  impunity by enrolling thousands of fictitious patients into the Uninsured Program and
2  billing for non-existent services to those fake patients.

3      6.    Fulgent did so by obfuscating the validity of their claims using an
4  assortment of some of the most common historically Hispanic first and last names in
5  the country, submitting huge numbers of claims on their behalf despite the patients
6  either not existing, or existing but not receiving the number of services Fulgent
7  submitted for reimbursement.

8      7.    Fulgent created hundreds of these "dummy" uninsured patients across
9  many different counties with multiple birthdates. Some patient names had hundreds
10  and even thousands of different entries in the system, each purportedly tested
11  multiple times over the course of the Relevant Time Period (some three times in one
12  day).

13      8.    In one particularly brazen example, Fulgent registered 2,318 patients
14  under the same name – ████████████ – from different states and zip codes (a
15  majority from California) with different genders. Other patient names that were
16  repeated thousands of times in the system included ████████, ████████ and
17  ████████.  It appears that Defendants used common Hispanic first and last
18  names to conceal their fraud given the high number of Hispanic individuals residing
19  in California.

20      9.    Needless to say, the creation of fake names and the submission of claims
21  for services not rendered was material to the claims for payment and is a violation of
22  the FCA.

23      10.   Even assuming that some of the patients were real individuals, which
24  they were not, Fulgent clearly submitted, or caused to be submitted, ineligible and
25  fraudulent claims to the Uninsured Program for COVID-19 testing to persons who
26  had health coverage on the relevant date of the service. Indeed, Fulgent billed for
27  more uninsured individual patients from certain zip codes than the total population
28  for those zip codes.

11.     For example, Fulgent enrolled and billed for 281,753 individual patients for the zip code 91780, which is Temple City, California. But census data shows that as of 2022, the total population in that zip code is only 35,556. In other words, Fulgent enrolled 8 times as many uninsured patients in this zip code than the population itself. This pattern is repeated across numerous zip codes.

12.     By knowingly disregarding its obligation to only seek reimbursement from the Uninsured Program for eligible COVID-19 testing, Fulgent fraudulently obtained hundreds of millions of dollars from the Government.

13.     Fulgent was a small genetic testing company that posted $33 million in revenue in 2019 but grew its revenue almost 30 times to $993 million in 2021. Fulgent reportedly relied on its testing laboratories to obtain contracts to run testing centers in Los Angeles County in California, in New York City for the New York City public school system, and in Utah. These contracts were essential to Fulgent's fraudulent scheme.

14.     The extraordinary profits obtained by Fulgent through the fraudulent scheme came at the expense of the public fisc and, ultimately, patients who lacked health insurance. Fulgent's fraudulent scheme drained limited funds appropriated by Congress to cover COVID-19 testing costs for uninsured persons. In March 2022, the Government announced that it would stop accepting claims for reimbursement for COVID-19 testing because of a lack of sufficient funding.

15.     In sum, Fulgent violated the FCA by falsely billing the Government for reimbursement on COVID-19 testing through the Uninsured Program. This action seeks to recover tens of millions of dollars (or more) for the Government in connection with those violations.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

16.     This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31

U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

17.    In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants at all times relevant to this action maintained principal places of business, and/or conducted business, in this District.

18.    Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein, including submission of false and fraudulent loan applications, occurred in this District.

19.    In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed *in camera*, will remain under seal for a period of at least 60 days, and shall not be served on the Defendants until the Court so orders.

20.    Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable E. Martin Estrada, United States Attorney for the Central District of California, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

21.    Relator is not aware that substantially the same allegations or transactions alleged in this Complaint have been publicly disclosed in any of the enumerated statutory channels under 31 U.S.C. § 3730(e)(4)(A)(i)-(iii). In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" because he has voluntarily provided his information to the Government before filing this Complaint (including on November 6, 2024), and he

1  has knowledge which is both direct and independent of, and materially adds to, any

2  public disclosures to the extent they may exist.

### PARTIES

4      22.    The United States is the real party of interest in this action.

5      23.    Relator is an employee of Optum Technology ("Optum") at

6  UnitedHealth Group ("UHG").

7      24.    Defendant Fulgent Therapeutics LLC is a limited liability company

8  headquartered in El Monte, California and chartered under the laws of California.

9      25.    Defendant Fulgent Genetics, Inc. is a corporation headquartered in El

10  Monte, California and incorporated under the laws of California.

### GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The Uninsured Program

13      26.    In response to the public health emergency caused by the global COVID-19

14  pandemic, Congress enacted various legislation to ensure that persons in the United

15  States could receive COVID-19 testing at no cost to themselves. Congress carefully

16  delineated who would cover the cost of this testing. For individuals with private

17  health insurance coverage, Congress mandated that private health insurers cover these

18  persons' medically necessary COVID-19 testing. *See* Families First Coronavirus

19  Response Act (the "FFCRA"), Pub. L. No. 116-127, 134 Stat. 178, 201 (2020) *as*

20  *amended by the* Coronavirus Aid, Relief, and Economic Security Act (the "CARES

21  Act"), Pub. L. No. 116-136, 134 Stat. 281, 366-367 (2020). Congress similarly

22  required that government health care programs, such as Medicare or Medicaid, cover

23  medically necessary COVID-19 testing for persons enrolled in such programs. *See*

24  FFCRA, Pub. L. No. 116-127, 134 Stat. 178, 202-208 (2020).

25      27.    For the remaining individuals who did not have health insurance coverage

26  (approximately 8.6% of persons in the United States), Congress appropriated finite

27  sums of funding that permitted HHS to reimburse health care providers that provided

28  COVID-19 testing to persons who did not have any health care coverage on the

relevant date of service ("Uninsured Individuals"). *See* FFCRA, Pub. L. No. 116-127, 134 Stat. 178, 182, 206 (2020); Paycheck Protection Program and Health Care Enhancement Act (the "Paycheck Protection Act"), Pub. L. No. 116-139, 134 Stat. 620, 626 (2020); CARES Act, Pub. L. No. 116-136, 134 Stat. 281, 563

(2020); American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4, 236 (2021).

28.  Health Resources and Services Administration ("HRSA"), an agency within the United States Department of Health and Human Services ("HHS"), established and administered the Uninsured Program, formally titled the *COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured*. In order to protect the integrity of the program, HRSA mandated that any providers seeking reimbursement from the Uninsured Program agree to specific Terms and Conditions, and make attestations regarding their compliance with specific program requirements.

29.  HRSA contracted with UHG to help administer the Uninsured Program.

30.  Upon enrollment, when a patient indicated that he or she did not have health insurance, he or she was required to provide his or her social security number, driver's license, or state ID number in order to confirm insurance information.

31.  The submission of claims to the Uninsured Program involved several steps, and providers were required to use two systems. First, through an online portal known as the "UIP Portal," health care providers had to enroll in the Uninsured Program and submit a "patient roster." The patient roster contained identifying information regarding the providers' uninsured patients, including the patient's birthdate and the patient's gender. In order to upload any patient roster, however, the provider had to make attestations to HRSA regarding these patients (the "Patient Roster Attestations").

32.  The Patient Roster Attestations included a representation from the provider that they had "checked for health care coverage eligibility and confirmed that the patient is uninsured, and does not have employer-sponsored or individual

1  coverage, Medicare or Medicaid and that no other payer will reimburse for COVID-19

2  testing or care for the patient."

3       33.   Further, in the Patient Roster Attestations, the providers had to attest that

4  they had read and agreed to the Uninsured Program's Terms and Conditions ("Terms

5  and Conditions"). Those Terms and Conditions (which were linked and available on

6  the Uninsured Program's website) specifically prohibited providers from seeking

7  reimbursement for COVID-19 testing that: (1) had been provided to patients who had

8  any health care coverage at the time the services were provided; or (2) would be (or

9  had been) reimbursed by another payor. The Terms and Conditions also contained the

10 following statement:

> The Recipient certifies that all information it provides as part of its application for the Payment, as well as all information and reports relating to the Payment that it provides in the future at the request of the Secretary or Inspector General*, are true, accurate and complete, to the best of its knowledge*. The Recipient acknowledges that *any deliberate omission, misrepresentation, or falsification of any information contained in a request for reimbursement or future report may be punishable by criminal, civil, or administrative penalties*, including but not limited to revocation of Medicare billing privileges, exclusion from federal health care programs, and/or the imposition of fines, civil damages, and/or imprisonment.

24      34.   Through their agreement to the Terms and Conditions, providers also

25 acknowledged their ongoing obligations, as well as the materiality of their

26 compliance. *See id.* ("The Recipient acknowledges that each time the Recipient

27 submits such claims for reimbursement, each claim must be in full compliance with

28 these Terms and Conditions, and submission of those claims confirms the Recipient's

ongoing compliance with these Terms and Conditions. The Recipient acknowledges that the Recipient's full compliance with all Terms and Conditions is material to the Secretary's decision to disburse funds to the Recipient. Non-compliance with any Term or Condition is grounds for the Secretary to recoup some or all of the payments made.")

35.    After a provider attested to compliance with these program requirements and submitted its patient roster, UHG (on behalf of HRSA) performed patient insurance eligibility checks for patients whose Social Security Numbers had been included in patient rosters submitted by providers to attempt to identify individuals with health insurance coverage. HRSA established the following policies regarding these patient insurance eligibility checks for UHG to follow. If UHG's eligibility check did not identify health insurance for an individual on a patient roster, UHG would assign the patient a Temporary Patient ID. Conversely, if UHG found that a patient included in a roster had insurance, it would not issue a Temporary Patient ID.

36.    Claims for COVID-19 testing submitted to the Uninsured Program that were not accompanied by a valid Temporary Patient ID would be rejected. Providers could then submit claims for reimbursement to the Uninsured Program by using the Temporary Patient IDs issued by Optum in claims submissions made through the Medicare Electronic Data Interchange, a system widely used by health care providers.

37.    The Uninsured Program generally reimbursed providers at rates published by the Centers for Medicare and Medicaid Services ("CMS"), which published Healthcare Common Procedure Coding System ("HCPCS") codes that were used in providers' electronic claims submissions to the Uninsured Program. Through these HCPCS codes, the providers identified the specific services rendered. The Uninsured Program reimbursed providers as much as $100 for providing a COVID-19 test, and an additional $23.46 for the collection of specimens.

38.    HRSA also provided ongoing guidance to providers. For example, HRSA published "Frequently Asked Questions" ("FAQs") and corresponding

answers on the Uninsured Program's website, such as the following FAQ about Uninsured Individuals:

> **Who is considered to be an "uninsured individual" for purposes of providers requesting reimbursement for testing, treatment, or vaccine administration?**
>
> For claims for COVID-19 testing and testing-related items and services, treatment of positive cases of COVID-19, and vaccine administration claims, a patient is considered uninsured if the patient did not have any health care coverage at the time services were rendered.

HRSA, *FAQs for COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment and Vaccine Administration FAQs* (published May 2021).

39.   Further, the Uninsured Program's website informed providers, that if they make direct contact with the patients, the provider should make its own "best efforts to confirm that the patient was uninsured."

40.   The Uninsured Program could only reimburse providers using the funds that had been appropriated by Congress. On March 16, 2022, HRSA informed providers that, on March 22, 2022, the Uninsured Program would stop accepting new claims for COVID-19 testing and treatment due to a lack of sufficient funds.

## The False Claims Act

41.   The FCA establishes civil penalties and treble damages liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1).

42.    "Knowingly" is defined to include actual knowledge, reckless disregard, and deliberate ignorance. 31 U.S.C. § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

43.    In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or false claim. *Id.* at § 3729(a).

## SPECIFIC FRAUD ALLEGATIONS

### I.    Fulgent takes Advantage of a Healthcare Crisis

44.    Fulgent Therapeutics was founded in 2011 by Dr. Ray Yin, Ming Hsieh, and James Xie. In 2016, Fulgent Therapeutics split into Fulgent Genetics and Fulgent Pharma LLC ("Fulgent Pharma"). As of 2024, Fulgent Therapeutics is the wholly owned subsidiary of Fulgent Genetics, a publicly traded genetic and clinical lab analysis company that strives to "create the most effective and wide-ranging tests on the market."

45.    In March 2020, the global pandemic necessitated an extensive partnership between private industry and public institutions to respond to unprecedented demand for COVID-19 testing.

46.    Prior to the COVID-19 crisis, Fulgent was a small but growing genetic testing company that saw annual revenue of $33 million. Once the COVID-19 crisis hit, it took advantage of its genetic testing capabilities and launched itself into COVID-19 testing through state government contracts.

47.    In order to pursue the lucrative government contracts to operate COVID-19 testing sites, Fulgent utilized laboratories it operates across the country in California, Texas, Massachusetts and Arizona.

48.    Fulgent thus contracted with various states including California, New York, and Utah to operate testing facilities for walk-in and drive-in testing of both insured and uninsured patients for the Uninsured Program.

49.    Not only were the contracts themselves lucrative, but this allowed Fulgent to bill private insurers for tests issued to insureds and the Government for tests issued to the uninsured.

50.    Over the course of the next two years, Fulgent billed the Government for over $582 million in tests to over 5 million purportedly uninsured patients. The underlying claims data for these tests confirms that many of them were illegitimate and the claims for payment associated with them fraudulent.

## II.    Fulgent's Fraudulent Billing Practices

### A.    The UHG Claims Data

51.    The federal government contracted with UHG to be the sole administrator of the COVID-19 Uninsured Program. In this capacity, UHG maintained the portal through which patients were enrolled by providers, processed the claims submitted by the provider, submitted the claims to the Government by providers, and issued payments to the providers when they were made by the Government. Accordingly, UHG maintained all of the claims data related to the Uninsured Program.

52.    The data confirms that millions of claims were fraudulently submitted for uninsured patients, for tests that were not performed, and for tests that were purportedly performed on people that do not exist.

53.    The following chart shows the Top 11 states by population, according to 2022 census data. In those states, the number of uninsured patients for whom claims were submitted far exceeded the number of uninsured in those states in all cases, and even exceeded the total population in several of those states.

FIRST AMENDED COMPLAINT (UNDER SEAL)

| State | Total # of Uninsured Patients Submitted | Total # of Uninsured members with Claims | State Pop - Uninsured Non-elderly (0-64) - 2022 | Overall State Pop - NST-EST2021 | % of Uninsured Members with Claims against State Uninsured | % of Uninsured Members with Claims against State Population |
|---|---|---|---|---|---|---|
| CA | 41,271,955 | 32,395,691 | 2,487,800 | 39,538,223 | 1302% | 82% |
| TX | 31,310,252 | 25,160,376 | 5,032,400 | 29,145,505 | 500% | 86% |
| FL | 26,588,019 | 21,979,230 | 2,495,000 | 21,538,187 | 881% | 102% |
| NY | 16,666,217 | 12,001,334 | 931,500 | 20,201,249 | 1288% | 59% |
| PA | 4,011,298 | 3,099,566 | 712,300 | 13,002,700 | 435% | 24% |
| IL | 16,709,715 | 13,064,738 | 825,900 | 12,812,508 | 1582% | 102% |
| OH | 2,665,274 | 2,235,041 | 693,000 | 11,799,448 | 323% | 19% |
| GA | 7,341,959 | 6,265,332 | 1,310,300 | 10,711,908 | 478% | 58% |
| NC | 5,743,409 | 4,648,563 | 1,001,600 | 10,439,388 | 464% | 45% |
| MI | 3,575,537 | 2,958,959 | 470,700 | 10,077,331 | 629% | 29% |
| NJ | 9,902,902 | 7,780,456 | 617,300 | 9,288,994 | 1260% | 84% |

54.     For example, in California, the Uninsured Program enrolled 13 times as many uninsured members as there were uninsured people in the entire state. Similarly, in Florida, the Uninsured Program enrolled almost 9 times as many uninsured members as there are uninsured people in the state, an amount that even exceeded the entire population of Florida.

55.     The data shows that the Uninsured Program became a feeding frenzy for opportunistic and unscrupulous healthcare providers who took advantage of a healthcare crisis and a lack of oversight.

### B.     The Fulgent Claims Data

56.     The data specific to Fulgent confirms that it was a substantial contributor to this glaring inconsistency between the actual uninsured population and those enrolled in the Uninsured Program.

57.     For example, this chart illustrates several similar serious red flags in Fulgent's data:

FIRST AMENDED COMPLAINT (UNDER SEAL)

| Fed Tax ID Nbr | Prov Name | Mem Zip | Mem Count | Claim Count | Paid Claim Count | Not Paid Count | COB Count | Total Paid Amount | Census Zip Pop (2022) | Mem Count % as of Zip Pop |
|---|---|---|---|---|---|---|---|---|---|---|
| 320400050 | FULGENT THERAPEUTICS | 91780 | 281753 | 355501 | 312455 | 43046 | 0 | $ 29,305,678 | 35556 | 792% |
| 320400050 | FULGENT THERAPEUTICS | 90071 | 648 | 836 | 652 | 184 | 0 | $ 64,925 | 313 | 207% |
| 320400050 | FULGENT THERAPEUTICS | 87525 | 114 | 137 | 131 | 6 | 0 | $ 13,100 | 64 | 178% |
| 320400050 | FULGENT THERAPEUTICS | 91768 | 43179 | 44576 | 43275 | 1301 | 0 | $ 4,326,635 | 35443 | 122% |
| 320400050 | FULGENT THERAPEUTICS | 90806 | 36618 | 37900 | 36824 | 1076 | 0 | $ 3,690,781 | 40688 | 90% |
| 320400050 | FULGENT THERAPEUTICS | 90810 | 31653 | 33113 | 32080 | 1033 | 0 | $ 3,206,046 | 36306 | 87% |
| 320400050 | FULGENT THERAPEUTICS | 90280 | 79814 | 85405 | 82361 | 3044 | 0 | $ 9,123,428 | 92262 | 87% |
| 320400050 | FULGENT THERAPEUTICS | 90813 | 45699 | 47434 | 45902 | 1532 | 0 | $ 4,607,165 | 53647 | 85% |
| 320400050 | FULGENT THERAPEUTICS | 91326 | 30671 | 31429 | 28580 | 2849 | 0 | $ 3,404,853 | 36503 | 84% |
| 320400050 | FULGENT THERAPEUTICS | 90022 | 51403 | 55361 | 51541 | 3820 | 0 | $ 5,639,435 | 64147 | 80% |
| 320400050 | FULGENT THERAPEUTICS | 90059 | 30631 | 32485 | 30955 | 1530 | 0 | $ 3,176,384 | 39471 | 78% |
| 320400050 | FULGENT THERAPEUTICS | 90804 | 28771 | 29942 | 29083 | 859 | 0 | $ 2,915,960 | 37299 | 77% |
| 320400050 | FULGENT THERAPEUTICS | 91344 | 38742 | 40935 | 37016 | 3919 | 0 | $ 4,279,184 | 53862 | 72% |
| 320400050 | FULGENT THERAPEUTICS | 90305 | 10362 | 12021 | 10491 | 1530 | 0 | $ 1,092,571 | 14679 | 71% |
| 320400050 | FULGENT THERAPEUTICS | 90802 | 28156 | 29794 | 28518 | 1276 | 0 | $ 2,863,599 | 40012 | 70% |
| 320400050 | FULGENT THERAPEUTICS | 90040 | 8299 | 8820 | 8234 | 586 | 0 | $ 887,448 | 11839 | 70% |
| 320400050 | FULGENT THERAPEUTICS | 95642 | 4982 | 5911 | 5256 | 655 | 0 | $ 525,620 | 7152 | 70% |
| 320400050 | FULGENT THERAPEUTICS | 91406 | 36724 | 38946 | 35424 | 3522 | 0 | $ 3,670,940 | 53276 | 69% |
| 320400050 | FULGENT THERAPEUTICS | 90262 | 44532 | 47500 | 45796 | 1704 | 0 | $ 5,015,461 | 66073 | 67% |
| 320400050 | FULGENT THERAPEUTICS | 91307 | 17071 | 17373 | 16386 | 987 | 0 | $ 1,972,683 | 25368 | 67% |
| 320400050 | FULGENT THERAPEUTICS | 91731 | 18657 | 19920 | 18717 | 1203 | 0 | $ 1,892,688 | 28201 | 66% |
| 320400050 | FULGENT THERAPEUTICS | 91342 | 60661 | 63428 | 58668 | 4760 | 0 | $ 6,703,674 | 92580 | 66% |
| 320400050 | FULGENT THERAPEUTICS | 90063 | 33830 | 36624 | 34128 | 2496 | 0 | $ 3,704,374 | 52008 | 65% |
| 320400050 | FULGENT THERAPEUTICS | 90014 | 6004 | 6253 | 6006 | 247 | 0 | $ 602,654 | 9273 | 65% |
| 320400050 | FULGENT THERAPEUTICS | 90755 | 7455 | 7742 | 7547 | 195 | 0 | $ 757,297 | 11764 | 63% |
| 320400050 | FULGENT THERAPEUTICS | 90805 | 60332 | 62851 | 60593 | 2258 | 0 | $ 6,127,943 | 96515 | 63% |

58.    This chart provides a snapshot of Fulgent's claims data by zip code and shows that for four zip codes in California and New Mexico, Fulgent enrolled and billed uninsured members exceeding the total population.

59.    For example, in Temple City, California, for the zip code of 91780, Fulgent enrolled 281,753 members, submitted 365,501 claims and had 312,455 of those claims paid by the Government, for a total of $29,305,678.

60.    According to the United States census data, however, the total population for 91780 was only 35,556. Therefore, Fulgent enrolled nearly 8 times more uninsured members than the entire population of the town.

61.    For a zip code in Los Angeles, California located in the Financial District that is approximately .12 square miles (90071), Fulgent enrolled twice as many members as the entire population and billed over 2 times the total population. For Taos Ski Valley, New Mexico (87525), Fulgent billed almost 2 times the total population.

62.    On its face, this data is impossible – a provider cannot enroll more people from a county than the total population.

63.    Furthermore, the overall data confirms that for over 200 zip codes in California, Fulgent enrolled and billed uninsured members that exceeded the

FIRST AMENDED COMPLAINT (UNDER SEAL)

percentage of California's population that is uninsured. As of 2022, 5.7% of California's population was uninsured.

64.     The underlying claims data provides the reason for the anomaly. Fulgent systematically, over the course of the COVID-19 crisis, enrolled fake patients into the portal and billed for those patients repeatedly. The below table illustrates Fulgent's scheme:

| TIN | Last Name | First Name | Mem Count | Claim Count | Paid Count | Not Paid Count | COB Count | Total Paid |
|---|---|---|---|---|---|---|---|---|
| 320400050 | ▉ | ▉ | 2318 | 2471 | 2323 | 148 | 0 | $239,869.89 |
| 320400050 | ▉ | ▉ | 2292 | 2479 | 2337 | 142 | 0 | $241,349.81 |
| 320400050 | ▉ | ▉ | 1963 | 2102 | 1963 | 139 | 0 | $202,572.26 |
| 320400050 | ▉ | ▉ | 1933 | 2066 | 1956 | 110 | 0 | $201,593.91 |
| 320400050 | ▉ | ▉ | 1915 | 2064 | 1943 | 121 | 0 | $199,423.82 |
| 320400050 | ▉ | ▉ | 1723 | 1885 | 1765 | 120 | 0 | $181,362.34 |
| 320400050 | ▉ | ▉ | 1701 | 1858 | 1749 | 109 | 0 | $177,900.21 |
| 320400050 | ▉ | ▉ | 1605 | 1702 | 1626 | 76 | 0 | $170,849.65 |
| 320400050 | ▉ | ▉ | 1557 | 1658 | 1584 | 74 | 0 | $163,187.86 |
| 320400050 | ▉ | ▉ | 1454 | 1530 | 1468 | 62 | 0 | $150,644.06 |
| 320400050 | ▉ | ▉ | 1439 | 1551 | 1484 | 67 | 0 | $152,287.15 |
| 320400050 | ▉ | ▉ | 1425 | 1523 | 1446 | 77 | 0 | $149,210.78 |
| 320400050 | ▉ | ▉ | 1408 | 1509 | 1430 | 79 | 0 | $147,163.81 |
| 320400050 | ▉ | ▉ | 1395 | 1508 | 1426 | 82 | 0 | $146,685.96 |
| 320400050 | ▉ | ▉ | 1377 | 1470 | 1405 | 65 | 0 | $144,475.78 |
| 320400050 | ▉ | ▉ | 1202 | 1318 | 1226 | 92 | 0 | $126,324.77 |
| 320400050 | ▉ | ▉ | 1084 | 1167 | 1125 | 42 | 0 | $115,694.99 |

65.     This chart shows 17 of hundreds of patient names enrolled in the Uninsured Program who had multiple identities provided by Fulgent. For example, the most billed for patient name in the portal by Fulgent was "▉." There are 2,318 of them in the portal who were enrolled by Fulgent. According to Fulgent, it tested those 2,318 ▉ identities 2,471 times, with each test submitted to the Government for reimbursement. Just 148 of those claims were unpaid (most typically because they were particular tests duplicated in the system), with Fulgent receiving $239,869.89 in reimbursement over two years for tests purportedly provided to a person or persons named ▉.

66.     Similarly absurd and implausible records abound in the UHG data. For example, 2,292 ▉ identities were created and tested 2,479 times, 1,963 ▉ identities were created and tested 2,102 times and 1,933 ▉ ▉ identities were created and tested 2,064 times.

FIRST AMENDED COMPLAINT (UNDER SEAL)

67. Fulgent enrolled hundreds of "dummy" patients with at least 50 alter egos in the portal, most of them with different birth dates and zip codes.

68. For patient ████████████████, the following breakdown shows how Fulgent created some of these fake patients:

| Row Labels | Count of Mem ID |
| --- | --- |
| 3/25/1966 | 73 |
| 9/16/1977 | 44 |
| 5/31/1962 | 42 |
| 2/2/1968 | 33 |
| 3/20/1970 | 33 |
| 3/29/1972 | 31 |
| 3/24/1967 | 31 |
| 8/19/1983 | 24 |
| 2/12/1947 | 21 |
| 9/27/1969 | 18 |
| 12/23/1977 | 17 |
| 5/30/1962 | 16 |
| 1/6/1972 | 15 |
| 1/18/1979 | 15 |

69. Thus, according to the data, Fulgent created 73 ████████████ identities all having a birthdate of March 25, 1996. Similarly, Fulgent created 44 ████████████████ identities all having the same birthdate of September 16, 1977.

70. Snapshots of the claim-by-claim breakdown highlights other fraudulent billing practices. For example, although different versions of patient profiles named ████████████ purportedly lived in different states, many were claimed to have been serviced out of Temple City, California, with many having the same referring physicians (Ref. NPI), same birth dates, and same zip codes, yet all having different member IDs.

FIRST AMENDED COMPLAINT (UNDER SEAL)



71. According to this data, several of the ████████████ identities were billed twice on the same day. This type of data is repeated for the other "dummy" patients that Fulgent fraudulently enrolled into the Uninsured Program.

72. Another example of Fulgent's fraudulent billing practices included listing hundreds – sometimes thousands– of individuals living at one address, as illustrated in the chart below. For example, 117 individuals lived at ████ in Ontario, California, and 127 individuals lived at ████████ in North Hills, California. According to property records, these addresses are single family homes.

73. On its face, this data is implausible – over 100 individuals could not be expected to live in a single-family home.

74.     Furthermore, 338,229 tests were billed to 4978 Santa Anita Ave in Temple City, California. Upon information and belief, that address is one of Fulgent's laboratories. Defendants may try to claim that that these individuals are homeless, but entries show that Fulgent billed tests to a separate "Homeless" address.

| TIN | Prov Name | Adr Ln1 | Adr Ln2 | City | Zip | State | Mem Count |
|---|---|---|---|---|---|---|---|
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | LOS ANGELES | 90059 | CA | 422 |
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | WOODLAND HILLS | 91367 | CA | 363 |
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | LOS ANGELES | 90038 | CA | 326 |
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | WHITTIER | 90602 | CA | 318 |
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | LANCASTER | 93536 | CA | 314 |
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | PASADENA | 91105 | CA | 289 |
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | COMPTON | 90221 | CA | 286 |
| 320400050 | FULGENT THERAPEUTICS | HOMELESS | | SHERMAN OAKS | | CA | |

75.     Additionally, the data shows thousands of tests billed to addresses of nursing homes or rehabilitation centers. For example, 4,926 tests were billed to 7836 Reseda Blvd in Reseda, California. Property records show that address is associated with Northridge Care Center, a skilled nursing facility that accepts Medicare and Medicaid. The expectation is that the majority, if not all, of the individuals who would be residing at that facility would have insurance whether it be private insurance or Government funded insurance. The sheer volume of tests that were billed to that address is extremely suspicious given the fact that Medicare and Medicaid covered COVID-19 tests until 2023.

76.     What is clear from this breathtaking underlying claims data is that Fulgent billed for patients that do not exist. It created thousands of fictional individuals, sometimes living at one address, in order to defraud the Government.

77.     Fulgent's creation of fictional individuals to bill for services not rendered resulted in the submission of false claims to the Government in violation of the FCA.

78.     In addition to creating fictional individuals, Fulgent also billed for fictional tests. Fulgent repeatedly billed for tests for one individual every few days. The below table illustrates Fulgent's scheme:

| Mem ID | Claim From Dt | Claim Receive Dt | Par Code | COB Code | Total Paid Amount | Fed Tax ID Nbr | State | NPI | Ref NPI | Svc ZIP | Mem SSN | Mem Last Nm | Mom Fst Nm | Gender | DOB | Mem Zip ST | Mem Src Dt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 441051609 | 4/1/2021 | 4/23/2021 | 1 | 0 | 123.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/3/2021 | 4/23/2021 | 1 | 0 | 123.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/7/2021 | 4/23/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/7/2021 | 7/4/2021 | 1 | 0 | 0 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/7/2021 | 7/9/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/9/2021 | 4/23/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/9/2021 | 7/4/2021 | 1 | 0 | 0 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/9/2021 | 7/9/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/13/2021 | 4/23/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/14/2021 | 4/23/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/15/2021 | 4/23/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/20/2021 | 4/23/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/20/2021 | 6/28/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/21/2021 | 4/23/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/21/2021 | 6/30/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/22/2021 | 4/25/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/22/2021 | 7/4/2021 | 1 | 0 | 0 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/22/2021 | 7/11/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/24/2021 | 4/26/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/24/2021 | 7/4/2021 | 1 | 0 | 0 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/24/2021 | 7/11/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/25/2021 | 4/27/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/25/2021 | 7/1/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/27/2021 | 4/29/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/27/2021 | 7/4/2021 | 1 | 0 | 0 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/27/2021 | 7/11/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/28/2021 | 4/30/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/28/2021 | 7/8/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/29/2021 | 5/2/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/29/2021 | 6/29/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/30/2021 | 5/3/2021 | 1 | 0 | 23.46 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |
| 441051609 | 4/30/2021 | 6/30/2021 | 1 | 0 | 100 | 320400050 | CA | 1174964738 | 1275559528 | 91780 | 44105 | | | M | 3/7 | 91780 CA | 4/20/2021 |

79.     This chart shows false tests created and billed for one patient profile using the name ▮▮▮▮▮ and the same member identification number. The data shows that Fulgent claimed to have performed tests on this ▮▮▮▮▮ patient profile every few days, and sometimes three consecutive days in a row. Fulgent would bill for specimen collections ($23.46) but not for the actual COVID-19 tests ($100) on several occasions for this patient.

80.     On its face, this data is implausible – during the Relevant Time Period, patients would not take a COVID-19 test every day. It took a few hours, and sometimes a few days, to receive test results. Nevertheless, Fulgent would bill tests three to four days in a row for this ▮▮▮▮▮ patient profile.

81.     Additional claims data shows that Fulgent engaged in other inexplicable billing practices, for example, for one patient in one day, Fulgent billed the Government for thirty (30) specimen collections.

FIRST AMENDED COMPLAINT (UNDER SEAL)

82.     The above chart shows that for patient profile named ▮▮▮▮▮, Fulgent billed thirty (30) specimen collections on April 14, 2021, and only one (1) test.

83.     All thirty (30) of these ▮▮▮▮▮ identities were born on June 7, ▮▮▮ and have the same zip code.

84.     Fulgent was able to do this by registering patients with the same name and birthdate dozens of times.



85.     As the chart above shows, 203 ▮▮▮▮▮ identities have the same birthdate of October 24, ▮▮▮. Of those 203 identities, Fulgent submitted 273 claims, and the Government reimbursed Fulgent for 246 of those claims, for a total of $24,580.49.

- 20 -

86.    This practice was repeated for hundreds of different fake patient
identities.

87.    Additionally, for the ████████████ identity, Fulgent billed the
Government for tests for multiple consecutive days.



88.    Fulgent also billed the Government for multiple tests taken on the same
day.

89.    The above chart shows that on April 14, 2021, Fulgent billed thirty (30)
████████████ identities thirty-one (31) times for a total of $803.80. This data also

1  confirms that for the ██████████ identities, Fulgent mostly billed for specimen
2  collections, not COVID-19 tests.

3      90.    Indeed, Fulgent received $37,564,011 in reimbursements for billing
4  patients with the same name on the same day.

5
6
7

| Provider Name | | Sum of Mem Count | Sum of Paid Count | Sum of Total Paid Amount |
|---|---|---|---|---|
| FULGENT 11 | | | | |
| | FULGENT THERAPEUTICS | 354,411 | 366,077 $ | 37,564,011 |

8      91.    What is clear from this claims data is that Fulgent billed for tests that did
9  not exist. It created fictional tests, some twice in one day, for the same patient profile
10  in order to defraud the Government.

11     92.    Fulgent's creation of fictional tests to bill for services not rendered
12  resulted in the submission of false claims to the Government in violation of the FCA.

13  **III.    Fulgent Damaged the Government Through the Submission of False**
14  **Claims**

15     93.    By creating false identities and submitting claims to the Government for
16  payment for non-services to those false identities, Fulgent violated the FCA.

17     94.    Between May 2020 and March 2022, Fulgent billed and received over
18  $582 million from the Uninsured Program, and a substantial portion of these
19  constituted false claims.

20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT (UNDER SEAL)

| Provider Name byDate | FULGENT THERAPEUTICS by Received Date | FULGENT THERAPEUTICS by Service Date |
|---|---|---|
| Sum of Total - Paid Amount | $ 596,347,056 | $ 595,083,454 |
| Sum of Feb 2020 - Total Paid Amount | $ - | $ - |
| Sum of Mar 2020 - Total Paid Amount | | $ - |
| Sum of Apr 2020 - Total Paid Amount | | $ 5,100 |
| Sum of May 2020 - Total Paid Amount | $ - | $ 112,900 |
| Sum of Jun 2020 - Total Paid Amount | $ - | $ 67,100 |
| Sum of Jul 2020 - Total Paid Amount | $ 41,200 | $ 9,528,289 |
| Sum of Aug 2020 - Total Paid Amount | $ 208,700 | $ 18,220,828 |
| Sum of Sep 2020 - Total Paid Amount | $ 5,736,000 | $ 14,563,322 |
| Sum of Oct 2020 - Total Paid Amount | $ 30,234,044 | $ 20,610,610 |
| Sum of Nov 2020 - Total Paid Amount | $ 5,331,100 | $ 30,230,442 |
| Sum of Dec 2020 - Total Paid Amount | $ 15,829,121 | $ 66,126,495 |
| Sum of Jan 2021 - Total Paid Amount | $ 56,145,045 | $ 70,110,542 |
| Sum of Feb 2021 - Total Paid Amount | $ 27,665,222 | $ 30,592,595 |
| Sum of Mar 2021 - Total Paid Amount | $ 100,812,422 | $ 20,663,375 |
| Sum of Apr 2021 - Total Paid Amount | $ 26,832,605 | $ 18,272,945 |
| Sum of May 2021 - Total Paid Amount | $ 8,065,192 | $ 13,384,105 |
| Sum of Jun 2021 - Total Paid Amount | $ 12,614,610 | $ 8,537,543 |
| Sum of Jul 2021 - Total Paid Amount | $ 32,504,474 | $ 12,208,360 |
| Sum of Aug 2021 - Total Paid Amount | $ 23,507,587 | $ 37,641,898 |
| Sum of Sep 2021 - Total Paid Amount | $ 54,509,414 | $ 39,486,799 |
| Sum of Oct 2021 - Total Paid Amount | $ 33,797,682 | $ 30,866,934 |
| Sum of Nov 2021 - Total Paid Amount | $ 25,658,660 | $ 23,803,752 |
| Sum of Dec 2021 - Total Paid Amount | $ 30,520,746 | $ 32,080,693 |
| Sum of Jan 2022 - Total Paid Amount | $ 55,052,630 | $ 73,549,523 |
| Sum of Feb 2022 - Total Paid Amount | $ 44,092,983 | $ 23,291,237 |
| Sum of Mar 2022 - Total Paid Amount | $ 7,187,620 | $ 1,128,066 |
| Sum of Apr 2022 - Total Paid Amount | $ - | $ - |

# COUNT I

## False Claims Act: Presentation of False Claims

## 31 U.S.C. § 3729(a)(1)(A)

95.    Relator repeats and incorporates by reference the allegations above as if fully contained herein.

96.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Fulgent has "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval" in violation of 31 U.S.C. § 3729(a)(1)(A).

97.    As a result of Fulgent's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and up to $11,000[1] for each and every

---

[1] A 2015 amendment to the False Claims Act authorized the U.S. Department of Justice to periodically inflation-adjust these penalties. Effective February 12, 2024, the minimum penalty is $13,946, and the maximum is $27,894.

FIRST AMENDED COMPLAINT (UNDER SEAL)

violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein.

## COUNT II

### False Claims Act: Making or Using A False Record
### or Statement to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

98.    Relator repeats and incorporates by reference the allegations above as if fully contained herein.

99.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Fulgent has "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim" – *i.e.*, the false certifications and representations made or caused to be made by Defendants – to get a false or fraudulent claim paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(1)(B).

100.    As a result of Fulgent's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and up to $11,000 for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein.

## COUNT III

### False Claims Act: Retaining Overpayment
### 31 U.S.C. § 3729(a)(1)(G)

101.    Relator repeats and incorporates by reference the allegations above as if fully contained herein.

102.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Fulgent has "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowing conceal[ed] or knowingly and

improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the Government" in violation of 31 U.S.C. § 3729(a)(l)(G).

103.   As a result of Fulgent's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and up to $11,000 for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against Defendants, ordering that:

A.   That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.   That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 or more than $27,894.00 per claim as currently provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (see 88 FR 5776, Feb. 12, 2024), as increased at the time that the penalty is assessed, together with penalties for specific claims to be identified at trial after full discovery;

C.   That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.   That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.   That Relator be granted such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.

1  DATE:   January 16, 2025              Respectfully submitted,

2                                        **HERRERA KENNEDY LLP**

3
                                         By: *s/ Bret D. Hembd*
4                                                Bret D. Hembd

5                                        Nicomedes Sy Herrera (SBN 275332)
                                         *nherrera@herrerakennedy.com*
6                                        Laura E. Seidl (SBN 269891)
                                         *lseidl@herrerakennedy.com*
7                                        Bret D. Hembd (SBN 272826)
                                         *bhembd@herrerakennedy.com*
8                                        **HERRERA KENNEDY LLP**
                                         3500 W. Olive Ave., Suite 300
9                                        Burbank, CA 91505
                                         Tel: (213) 394-3100
10
                                         -and-
11
                                         David B. Harrison, Esq.
12                                       (*pro hac vice to be filed*)
                                         *dharrison@shnlegal.com*
13                                       Alexandria D. Martinez, Esq.
                                         (*pro hac vice to be filed*)
14                                       *amartinez@shnlegal.com*
                                         **SPIRO HARRISON & NELSON**
15                                       363 Bloomfield Ave., Suite 2C
                                         Montclair, NJ 07042
16                                       (973) 744-2100

17                                       *Attorneys for Plaintiff-Relator*

18

19

20

21

22

23

24

25

26

27

28

1    **<u>PROOF OF SERVICE</u>**

2    I am over the age of eighteen and not a party to the action.

3    On January 16, 2025, I served the following document(s):

4    **FIRST AMENDED COMPLAINT IN CIVIL ACTION 2:24-cv-10648-**

5    **PA (RAOx)**

6    Via First Class Mail, by placing a true and correct copy of the foregoing

7    document(s) in a sealed envelope addressed to the parties below, and depositing the

8    envelope postage fully prepaid with the United States Postal Service by close of

9    business:

10    **SEE ATTACHED SERVICE LIST**

11    I declare under penalty of perjury that the foregoing is true and correct.

12    Executed in Montclair, New Jersey, on January 16, 2025.

13

14                              */s/Olivia DeMarco*
                               Olivia DeMarco
15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

PROOF OF SERVICE

1

# **<u>SERVICE LIST</u>**

2
3
4
5

E. Martin Estrada
United States Attorney
Central District of California
312 North Spring Street, Suite 1200
Los Angeles, CA 90012
213-894-2400
Fax: 213-894-0141

6
7
8
9

Hon. Merrick B. Garland

Attorney General of the United States

U.S. Department of Justice

950 Pennsylvania Avenue, NW

Washington, DC 20530-0001

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE